CROWLEY, Appellant, vs. FICKS, Respondent.

*October 9—November 4, 1919.*

*Good will: Breach of contract not to engage in business.*

One who was the selling agent of a corporation and received as compensation fifty per cent. of the net profits, and to all intents and purposes was the active manager and backbone of the corporation, was "indirectly" engaged in such business, within the meaning of a contract of sale of a similar business wherein he agreed not to again engage in such business, "directly or indirectly," and although he was not a stockholder of the corporation.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Reversed.*

Action in equity for relief by injunction. Prior to December 26, 1917, the General Paper & Supply Company, a corporation, 100 shares of whose capital stock was owned by the defendant, carried on a wholesale business in paper of various kinds and woodenware at Madison, Wisconsin, and on the day named the defendant sold his said stock, which was of the par value of $10,000, to the plaintiff, agreeing in writing that he (the defendant) would not engage "directly or indirectly in the wholesale trade of wrapping paper, including tobacco paper, paper bags, and woodenware in the city of Madison," and would not engage "directly or indirectly or as a salesman in the wrapping and tobacco paper and paper-bag trade in the city of Madison or within a radius of fifty miles thereof" for five years from the date of sale. The plaintiff claims in this action that the defendant has violated this contract by engaging indirectly in the wholesale woodenware business in the city of Madison and demands that he be enjoined from further violation of said contract.

The facts were not seriously in dispute. Shortly after the contract was signed the defendant engaged in the wholesale woodenware business in his own name in Madison, but on being expostulated with by the plaintiff and taking advice on the subject he discontinued that business about March 1, 1918. At that time he had a stock of woodenware in Madison of the value of about $2,000. He had been arranging with Mr. Hirsig and Mr. Wiedenbeck for the formation of a new corporation to take over his woodenware business at Madison to be called the Charles D. Ficks Company, but the plan was abandoned because of the discovery of the fact that the contract with *Crowley* prevented *Ficks* from engaging in the wholesale woodenware trade at Madison.

About the 20th of March, however, a new corporation called the Madison Hardware Specialty Company was formed, in which Hirsig and Wiedenbeck were the principal stockholders. *Ficks* owned no stock in this company, but

he knew all about the project and had conferences with both Hirsig and Wiedenbeck about it, in which conferences it was agreed that the new corporation should take over *Ficks's* stock of woodenware and that *Ficks* should be employed by it as a traveling salesman to sell woodenware, receiving as compensation fifty per cent. of the net profits.

Both Hirsig and Wiedenbeck had other business, and the woodenware business of the new corporation was very largely conducted by *Ficks*. ' According to his own testimony he sold from seventy to ninety per cent. of the goods, he was on the road about five days out of the week, but on Saturdays was always in the home office, ordered goods, wrote letters for the company, signed the company's name to letters and orders, and he testified on adverse examination that the management of the business, "so far as ordering from jobbers and manufacturers is concerned," was either left in his hands directly or he suggested to some officer of the company what he wanted in the line of supplies to the stock on hand. On the same examination he testified that Mr. Hirsig was the man who did most of the business, most of the ordering from manufacturers and jobbers, but that he (*Ficks*) in a measure divided the responsibility with him.

The trial court found that the defendant was not engaged directly or indirectly in the wholesale trade in woodenware in the city of Madison and dismissed the complaint, and the plaintiff appeals.

For the appellant there was a brief by *Gilbert & Ela* of Madison, and oral argument by *F. L. Gilbert.*

For the respondent there was a brief by *Bagley & Reed* of Madison, and oral argument by *W. R. Bagley.*

WINSLOW, C. J. We think this judgment must be reversed. The word "indirectly" was inserted in the contract for some useful purpose, not for mere ornament. It clearly indicates that the fact was recognized that effort might be made to evade or render nugatory the agreement by avoid-

ing direct and open participation in a firm or corporation while retaining actual authority and an actual interest in the profits, and that it was proposed to prevent just that thing.

Under *Mr. Ficks's* own admissions we can come to no conclusion but that he was to all intents and purposes the active manager and backbone of the woodenware business of the Madison Hardware & Specialty Company. He was a salesman, it is true, but he was evidently far more than a salesman; he was a salesman with a large interest in and an important share in the management of the business although he was not a stockholder. We can hardly imagine a more typical instance of indirectly engaging in a business than this. *Mr. Ficks* upon his own testimony was, to all intents and purposes, engaged in the wholesale trade in woodenware in the city of Madison though he owned no stock in the corporation under whose name he acted. 22 Cyc. 869.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the plaintiff in accordance with this opinion.